UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**CHRISTINA MARTIN,**

      **Plaintiff,**

v.                                                                   Case No. 3:13cv375/MCR/CJK

**OKALOOSA COUNTY BOARD OF
COUNTY COMMISSIONERS,**

      **Defendant.**

_____/

## ORDER

      Plaintiff Christina Martin ("Martin") filed this suit in state court against Defendant Okaloosa County Board of County Commissioners ("County"), alleging she was not hired as a 911 Communications Technician because of her gender, in violation of Florida's Civil Rights Act ("FCRA"), Fla. Stat. 760.10, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; and also in retaliation for her exercise of rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*. The County removed the case and has moved for summary judgment. Martin opposes the motion. Having fully reviewed the record and the parties' arguments, the Court finds that the motion is due to be granted in part and denied in part.

**Background**[1]

      The undisputed facts reflect that Martin applied for three jobs with the County as a Communications Technician, two vacancies in June 2011 and one in November 2011. The

---

[1] For the limited purposes of this summary judgment proceeding, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," which in this case is the Plaintiff. *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted). The Court is mindful that "what is considered to be the facts at the summary judgment stage may not turn out to be the actual facts if the case goes to trial." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

record shows that Martin learned of the vacancies from an acquaintance, Brittany Mosley, who worked for the County but was not a decisionmaker. The Communications Technician position involves answering and routing 911 emergency calls. Applicants for the position must have a high school diploma or GED; a minimum of one year of emergency dispatching, communications, or other related experience; successful completion of a DOT approved Emergency Medical Dispatch course, or completion within one year of employment; and 911 Public Safety Telecommunicator Certification within one year of employment.

It is undisputed that Martin was qualified for the position. She had a high school diploma; certification in the FCIC/NCIC computerized criminal information database as well as two other databases relating to emergency services; and five years of experience with the DeFuniak Springs Police Department, working as an administrative assistant and then as management in the Communications Division, where she answered 911 calls and had responsibility for recruiting, interviewing, and selecting employees to work as a 911 Telecommunications Operator, among many other tasks.

Martin was interviewed for the June 2011 vacancies. The selection team consisted of Daniel Dunlap, the 911 Communications Division Chief, and Jose Perez, the Communications Supervisor. Martin testified by deposition that during her interview, she told Dunlap and Perez about her work experience and work history. She told them that she had been terminated from her position at the City of DeFuniak Springs Police Department.[2] After the interviews, the County selected Martin as one of the top four candidates. Martin received a text message from her acquaintance Mosley, who worked for Dunlap, telling Martin that she was their number one choice. The top-rated candidates were Martin, Jesse Johnson, Barron Lathers, and David Kilinski. Martin was the only female.

At that point, the County began its pre-employment background and reference checks on the top candidates. The record reflects that typically, the County checks candidates' employment references from the last 10 years. Joanna Simms, a Human

---

[2] Martin had also filed a lawsuit against her former employer DeFuniak Springs, in part asserting FMLA rights. She did not notify Dunlap and Perez about her lawsuit during her interview.

Case No. 3:13cv375/MCR/CJK

Resources Technician, checked Martin's references. Sims learned from Martin's most recent employer, the City of DeFuniak Springs Police Department, that Martin had worked as a dispatcher but was terminated for insubordination. She also learned that Martin had an on-going lawsuit against the City, in part to enforce her FMLA rights,[3] and that the City would not consider Martin for rehire. Through a public records request for documentation, the County obtained Martin's performance evaluations from the City, which, although mostly satisfactory, included a verbal counseling and evidence that Martin had shown insubordinate behavior toward her superiors. A second negative reference came from the One Stop Career Center where Martin had worked as a case manager and receptionist approximately eight or nine years earlier. Two of Martin's prior supervisors at One Stop Career Center told Simms that Martin had left voluntarily, but they would not consider her eligible for rehire due to what they referred to as an "attitude problem" and because she had reported for work late on several occasions. Ginneal McVay, Human Resources Manager for the County, stated that in light of this information, she, Dunlap, and the Human Resources Director, Kay Godwin, decided that it would not be in the County's best interest to offer Martin the position.

Applicant Jesse Johnson was the second top candidate. He, like Martin, had prior experience as a dispatcher. McVay said that when his references were checked, however, they discovered several discrepancies in information he had supplied regarding his references and had exaggerated his work experience. One reference was extremely negative, and again, Dunlap, in consultation with the Human Resources personnel, decided not to offer Johnson a position.

The County hired Barron Lathers and David Kilinski (both male) to fill the June positions. Neither had received an employment reference so negative that the prior employer stated it would not consider rehiring them. Lathers and Kilinski each listed eight

---

[3] The County disputes that it knew FMLA rights were at issue in the suit. Those involved in the hiring process for the County maintain that they did not know Martin's suit involved FMLA rights until Martin filed this suit, whereas Martin contends they were aware of the nature of her suit because she told Dunlap. Her FMLA lawsuit against her former employer was filed in November 2010 and settled in February 2012. Martin did not tell Dunlap about her lawsuit during her interview.

or more years of experience in emergency dispatching and/or emergency communications. In addition, Lathers listed 17 years of Command and Control experience in "operat[ing] and monitor[ing] communications, detection, and weapons systems essential for controlling air and ground forces;" and he was an honorably discharged veteran with a service-connected disability, able to claim a veteran's preference. Kilinski's resume showed 20 years in security forces at Eglin Airforce Base, with 10 years of dispatching experience.

Martin contacted Dunlap sometime in September or October to discuss why she was not selected.  According to Martin, he pointedly told her in this telephone conversation that she was not hired for the position because they had "information on the FMLA lawsuit" against the City, and Dunlap said the lawsuit "was too big of a liability."[4]  (Doc. 57-1, at 44-45).  Dunlap testified in his deposition that the negative references and documentation related to her termination from the DeFuniak Springs Police Department led the departmental review team to decline to offer Martin the position.  In particular, he testified that he did not want to inherit employment problems by hiring an applicant who had a "bad background," "bad information," or "bad references" from two prior positions. (Doc. 52-6, Dunlap Depo. at 25-26).  He denied telling Martin that her pending FMLA lawsuit was a factor.

Another position was advertised in November 2011.  Martin applied again and ultimately received an email that she was not selected for the position.  Instead, the position was filled by a male, Martin Peak, who had in excess of 20 years experience. Peak ultimately withdrew his acceptance of the position, and the hiring process had to start over.  Martin did not reapply.

Martin brought suit alleging gender discrimination, claiming she was more qualified than the male applicants who were hired, and alleging FMLA interference and retaliation on grounds that the County failed to hire her because she had filed an FMLA lawsuit against a prior employer.

---

[4] In her interrogatory answers, Martin described this conversation as Dunlap referencing her "lawsuit" but she did not say that he referenced it as "the FMLA lawsuit."

Case No. 3:13cv375/MCR/CJK

**Discussion**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). The Court views all the evidence, and all factual inferences reasonably drawn from the evidence, in the light most favorable to the nonmoving party, *see Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993), but the nonmoving party must present more than evidence which is "merely colorable" or "not significantly probative" to survive a properly supported summary judgment motion, *Anderson*, 477 U.S. at 249. In the summary judgment context, credibility determinations are impermissible. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

Under Title VII and the FCRA, it is an unlawful employment practice for employers to make hiring decisions that discriminate on the basis of sex. *See* 42 U.S.C. § 2000-e(2)(a)(1); Fla. Stat. § 760.10(1)(a). Where there is no direct evidence of discriminatory treatment, the Court considers the claim and the summary judgment record through the lens of the *McDonnell Douglas*[5] burden-shifting analysis.[6] *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Under this framework, a plaintiff claiming she was not hired because of her gender bears the initial burden to set forth a *prima facie* case

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[6] State law FCRA claims are governed by the same analytical framework applicable to Title VII claims. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

Case No. 3:13cv375/MCR/CJK

of discrimination by showing (1) she is a member of a protected class; (2) she was qualified for the vacant position and applied; (3) she was not hired; and (4) someone outside the protected class was hired instead. *See Vessels v. Atl. Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). This creates a rebuttable presumption of an unlawful employment practice, and the burden shifts to the employer, who must then come forward with evidence of a legitimate, nondiscriminatory reason for rejecting the candidate. *See id.* at 767-68; *see also Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). This burden has been characterized as "exceedingly light." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061–62 (11th Cir. 1994). If the employer meets this burden, the inference "drops out of the case entirely," and to survive summary judgment on the claim, the plaintiff must show by a preponderance of the evidence that the employer's reasons were pretextual. *Vessels*, 408 F.3d at 768; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Pretext consists of evidence that is "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008). The record as a whole must be sufficient to show that "the proffered reason really is a pretext for unlawful discrimination," in this instance, on the basis of gender. *See Joe's Stone Crabs*, 296 F.3d at 1272. However, the Eleventh Circuit has also explained:

> [A] plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.

*Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (citations and internal marks omitted). Various forms of circumstantial evidence can raise a reasonable inference of discriminatory intent, but to be reasonable, an inference must be a logical conclusion, "not a suspicion or a guess." *Id.* at 1328 & n.25. A plaintiff may show pretext "directly by persuading the court that a discriminatory reason more likely motivated the

employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Burdine*, 450 U.S. at 256). Whichever method is used, the evidence must show not just that the reasons proffered were ill-founded but that unlawful discrimination was the true reason. *Alvarez v. Royal At. Dev. Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010) (citing *Reeves*, 530 U.S. at 148).

For purposes of this motion, the County admits that Martin has established a *prima facie* case of gender discrimination because she is female, she was qualified and applied, she was not hired, and a male was selected instead. Thus, the burden shifts to the County to demonstrate a legitimate reason for the failure to hire. The undisputed record shows that the County has put forward evidence of a legitimate reason for hiring the male applicants it selected, instead of Martin. Dunlap, who was the County's hiring authority, testified, as did the County's Human Resources personnel, that although Martin was in the top tier of candidates during the June hiring round, she was not hired because her previous employer references, two of which stated Martin would not be considered for rehire with them. Also, Dunlap referenced insubordinate conduct in Martin's employment record. Having proffered a legitimate nondiscriminatory reason for the failure to hire Martin, the County met its burden, and Martin must demonstrate pretext.

Martin offered no evidence to contradict that she in fact had two references who said they would not consider hiring her again and that her employment record includes references to insubordination. Instead, she asserts inconsistencies to show that the County's reason is unworthy of credence because the male applicants were not as qualified as she and they also had negative references. Courts do not allow a plaintiff to simply litigate whether she would be a good employee, however, or to second guess the accuracy or wisdom of an employment decision. *See Alvarez*, 610 F.3d at 1266. It is undisputed that, regardless of the negative comments that Martin points out in the references of the applicants who were hired, neither of them had a prior employment reference unwilling to rehire them, as did Martin, and, consistently, the County rejected Johnson as well when problems surfaced during his reference check. Moreover, to raise

an inference of discrimination based on a disparity of qualifications, the disparity must be weighty and significant. *See Wilson v. BE Aerospace, Inc.*, 376 F.3d 1079, 1090 (11th Cir. 2004) (the disparity in qualifications must be "so apparent as virtually to jump off the page and slap you in the face" (internal marks omitted)). The evidence here simply does not show that Martin was so much more qualified "that no reasonable person would have chosen [Lathers and Kilinski] over [her]." *Id.*

Martin presented her own deposition testimony that Dunlap told her the true reason she was not hired was the fact that she had filed an FMLA lawsuit against her former employer. This evidence does tend to show that the proffered reason (negative references and insubordination) may not have been the true reason she was not hired. However, nothing about that evidence raises an inference that *gender* discrimination, instead of negative references or a lawsuit, was in fact the true reason Martin was not hired. Showing only that a proffered reason is false does not necessarily mean the claim will survive summary judgment; the record must show or raise an inference that unlawful gender discrimination was the true reason for the adverse employment action for the claim to survive. *Alvarez*, 610 F.3d at 1267. The fact that Martin was not hired because she had filed an FMLA lawsuit against a former employer raises no reasonable inference of gender discrimination.

Martin argues that the mosaic of circumstantial evidence as a whole is sufficient to raise an inference of gender discrimination because the decisionmakers were male, the applicants chosen were male, and the applicants chosen had served in the military, which she characterizes as a male-dominated profession. The Court disagrees. Martin has shown nothing more than that a male was hired instead of her. Without more, this evidence is insufficient to raise a reasonable inference of gender discrimination. Allowing such an inference on this record would be nothing more than guesswork. Thus, the Court finds that even viewing the inferences in favor of Martin, there is no pretext shown that gives rise to a reasonable inference of gender discrimination and the record does not show a "convincing mosaic" of circumstantial evidence from which such an inference reasonably could be drawn. The County is therefore entitled to summary judgment on this claim.

Case No. 3:13cv375/MCR/CJK

The County also argues it is entitled to summary judgment on Martin's FMLA claim. The Court disagrees. Under the FMLA, any employer who interferes with, denies, or retaliates against an employee based on the exercise of FMLA rights is liable for damages. *See* 29 U.S.C. § 2615(a)(1) & (2). The regulations implementing the statute state that interference and retaliation include acts of discrimination by an employer against a perspective employee for exercising FMLA rights or opposing practices that are unlawful under the FMLA. *See* 29 C.F.R. § 825.220(a)(2) (stating an employer is prohibited from discriminating against any person "whether or not an employee" for opposing or complaining about an unlawful FMLA practice) & (c) ("The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."). The Eleventh Circuit interprets the FMLA broadly to ensure that employees may freely exercise their FMLA rights, instructing, "nomenclature counts less than substance" for purposes of determining the nature of an FMLA claim. *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1313 (11th Cir. 2001). "The substance of the FMLA is that an employer may not do bad things to an employee who has exercised or attempted to exercise any rights under the statute." *Id.* (internal marks omitted). An FMLA discrimination or retaliation claim requires proof that the employer's actions were motivated by an impermissible discriminatory or retaliatory animus. *See Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2011).

The record does not reflect any facts that could be considered interference with Martin's actual *exercise* of an FMLA right to which she was entitled. However, "interference" includes discrimination against a person who complained about an unlawful practice or is exercising FMLA rights. Martin phrased her claim in terms of discrimination and retaliation, which require a showing of intentional discrimination or retaliatory intent. Martin has demonstrated the existence of a material issue of fact from which intentional FMLA discrimination or retaliation reasonably could be inferred because in her own deposition testimony, Martin stated that Dunlap told her the FMLA lawsuit was the reason she was not hired. If believed, this is direct evidence of discrimination based on the

exercise of FMLA rights.  Therefore, summary judgment will be denied on the FMLA claim.

Accordingly:

1. Defendant's Motion for Summary Judgment (doc. 51) is **GRANTED in part** and **DENIED in part** as follows**:**

    a. **GRANTED** as to Count I (gender discrimination)

    b. **DENIED** as to Count II (FMLA interference or retaliation).

2. The case will be scheduled for trial by separate order.

**DONE and ORDERED** this 31st day of March, 2015.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**